## Thomas v. Commonwealth.

(Decided October 30, 1928.)

## Appeal from Warren Circuit Court.

1. Searches and Seizures.—Officers' entry of premises without search warrant or warrant for arrest of occupant, whom they arrested for being drunk, though he had created no disturbance in their presence or hearing, was unlawful, as no offense was being committed by him.
2. Searches and Seizures.—Defendant's reply, "Go ahead," when officers, who had broken into his residence unlawfully and arrested him, stated they would have to go upstairs and see what he had up there, did not amount to consent to search premises without warrant; situation being one of coercion rather than consent.
3. Searches and Seizures.—Search of premises by officers on return trip, at request of defendant's wife, to fix door and window pane broken on first trip, and seizure of whisky discovered in upstairs room, in which they had not been during previous search, held unlawful.
4. Criminal Law.—Where all evidence in trial for unlawful possession of intoxicating liquor was obtained by illegal search of defendant's premises, it should have been excluded, and defendant's motion for directed verdict sustained by court.

G. D. MILLIKEN for appellant.

CHARLES R. BELL, J. W. CAMMACK, Attorney General, and GEO. H. MITCHELL, Assistant Attorney General, for appellee.

OPINION OF THE COURT BY CHIEF JUSTICE CLAY—Reversing.

Briggs Thomas was convicted of the unlawful possession of intoxicating liquor, and has prayed an appeal.

The principal ground on which a reversal is asked is that all the evidence was obtained by an illegal search.

Thomas was the lessee of a three-story building on Main street in Bowling Green. The first floor was used for a restaurant, and the second and third floors were occupied by him and his wife as living apartments. At the right of the restaurant is a door opening into a private stairway that leads to the street from the second and third floors. James Thomas, a son of Briggs Thomas, lived at a hotel about three blocks from the residence of his parents, and was not on speaking terms with his father. Becoming uneasy about his mother, he approached certain policemen and requested an investigation. The policemen, Duncan and Cassidy, and Federal

prohibition officer Taylor accompanied him to the building occupied by his father. The door at the foot of the stairs was locked. James Thomas broke the glass in the door, and then left for a search warrant at the request of the officers. He failed to find the police judge and returned without a warrant. Officer Duncan reached through the broken glass and unlocked the door, which was fastened by a Yale lock. As he went through the door, Briggs Thomas, who had heard the crash of the glass, was coming down the steps and was then and there placed under arrest for being drunk, although he had created no disturbance in the presence or hearing of the officers. On being arrested Thomas went into the restaurant, where he remained until taken to the police station. After the arrest Duncan asked Thomas where his wife was. Thomas said, "Upstairs." Duncan then said, "Well, we will have to go up there and see about her—see what he had up there." And Thomas said, "Go ahead." The officers then went to the third story, where Mrs. Thomas was lying in bed, and found a half-gallon jar of whisky in the middle of the room. After Thomas was taken to the station house, the officers claim that Mrs. Thomas called over the phone and wanted the windows nailed up. She said the windows were broken, the back window, and wanted them to come down there and nail it up. They then went and got some lumber and nails, went back to the house, and nailed up the window and front door. While there they found some whisky at the left of the back door to the back room of the second story of the building. They had not been in that room before. The conduct of the officers at the house shows that their main purpose was to search the premises.

At the time the officers entered the premises in question, they had neither a search warrant nor a warrant for the arrest of Thomas, and as no offense was being committed by him, there can be no doubt that their entry was unlawful. Wathen v. Commonwealth, 211 Ky. 586, 277 S. W. 839. Nor, in the circumstances, can it be held that Thomas' reply, "Go ahead," amounted to a consent to search the premises. He was then under arrest and surrounded by several officers who had broken into his residence, and the situation was one of coercion rather than of consent. Witt v. Commonwealth, 219 Ky. 519, 293 S. W. 1072. It is clear, therefore, that on the first trip of the officers to the house the liquor was discovered by an unlawful search.

But the point is made that they were lawfully on the premises when they discovered the liquor on their return trip. The basis of this contention is that they were directed to return to fix the door and window panes. Conceding, as we must, that Mrs. Thomas, made the request, the officers were certainly under no duty, and had no right to engage in a general repair of the premises. All that had been done in their presence, and with their sanction, was the breaking of the glass in the door. The whisky was not discovered while engaged in repairing the door. It was discovered near the back door of the upstairs room, and they had never been in this room. In the circumstances 'they were merely making a search under the guise of fixing. panes in that room.

As all the evidence was obtained by an illegal search, it should have been excluded by the court, and the motion for a directed verdict should have been sustained.

Wherefore, the appeal is granted, and the judgment reversed and cause remanded for a new trial consistent with this opinion.